IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-HC-2009-FL

BRUCE L. GORHAM,                          )
                                          )
                    Petitioner,           )
                                          )
        v.                                )               ORDER
                                          )
STATE OF NORTH CAROLINA and               )
DEPARTMENT OF PUBLIC SAFETY,              )
                                          )
                    Respondents.          )


        Petitioner, a state inmate proceeding pro se, petitions this court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.   The matter is before the court on respondent's motion for summary

judgment (DE 17) pursuant to Federal Rule of Civil Procedure 56.   Petitioner responded in

opposition and in this posture the issues raised are ripe for ruling.   For the reasons stated below,

the motion is granted.

                              **STATEMENT OF THE CASE**

        On September 30, 2009, petitioner was convicted following a jury trial in the Wake County

Superior Court of one count of robbery with a dangerous weapon, one count of conspiracy to

commit first-degree burglary, and one count of assault with a deadly weapon inflicting serious

injury.   See State v. Gorham, No. COA10-673, 2011 WL 1940976, at *4 (N.C. Ct. App. May 17,

2011).   The Wake County Superior Court sentenced petitioner to the following consecutive terms

of imprisonment: 1) 125 to 159 months for robbery with a dangerous weapon; 2) 53 to 73 months

for conspiracy to commit first-degree burglary; and 3) 53 to 73 months for assault with a deadly weapon inflicting serious injury. (Pet. (DE 1-1) at 10).[1]

Following imposition of the sentence, petitioner filed numerous post-conviction motions for appropriate relief and habeas corpus petitions in the state trial court challenging his convictions and sentence. See Gorham v. North Carolina, No. 5:14-HC-2177-FL, 2015 WL 12915120, at *1–2 (E.D.N.C. Dec. 22, 2015) (describing petitioner's post-conviction filings prior to his first federal habeas petition). The state court denied relief on each of petitioner's post-conviction motions and petitions filed before August 2014. Id. On August 15, 2014, petitioner filed his first petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court. Gorham v. North Carolina, No. 5:14-HC-2177-FL (E.D.N.C. Aug. 15, 2014). On December 22, 2015, the court granted respondent's motion for summary judgment. Gorham, 2015 WL 12915120, at *12. On August 3, 2016, the United States Court of Appeals for the Fourth Circuit declined to grant a certificate of appealability and dismissed petitioner's appeal of the court's order. Gorham v. North Carolina, 667 F. App'x 817 (4th Cir. 2016).

Undeterred, petitioner returned to state court and filed a new motion for appropriate relief on or about January 16, 2018 ("2018 MAR"). (2018 MAR (DE 19-2) at 94–101). Petitioner challenged his state judgment of conviction on the following grounds: 1) that the trial court erred by allowing the prosecutor to cross examine petitioner about certain prior convictions; and 2) the prior record level used to determine his sentencing range was erroneous. (Id.). On January 19, 2018, petitioner moved to amend the 2018 MAR, arguing that two of his prior convictions were

---

[1]     Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

2

improperly counted when determining the prior record level.  (Id. at 101–04).  On February 19, 2018, the state trial court granted relief on the claim that his prior record level was erroneous, denied relief on all other claims, and ordered resentencing.  (2018 MAR order (DE 19-2) at 113–16).

The state trial court resentenced petitioner on August 20, 2018.  (Sent'g Tr. (DE 19-2) at 4–27).  With respect to petitioner's robbery conviction, the state court found the prior record level was V and sentenced petitioner to 125 to 159 months' imprisonment, the same sentence imposed at the original sentencing.  (Id.)  The state court found the prior record level for the conspiracy to commit burglary and assault with a deadly weapon inflicting serious injury convictions was IV and sentenced petitioner to consecutive terms of 46 to 65 months' imprisonment for each these offenses.  (Id. at 22).

Petitioner next filed an "application petition for writ of habeas corpus by affidavit" in the state trial court on or about August 27, 2018, asserting the following claims:  1) the indictments in his criminal proceedings were defective and deprived the state court of jurisdiction; 2) errors in his prior record level deprived the state court of jurisdiction to sentence him; and 3) his trial counsel was ineffective based on a conflict of interest and where he allegedly failed to object to the prosecution based on defective indictments and jurisdictional defects.  (DE 19-2 at 117–153).  The state court summarily denied the habeas corpus petition on September 21, 2018.  (Id. at 153–56).

Petitioner sought appellate review of the state trial court's orders denying in part the 2018 MAR, denying his August 27, 2018, petition for writ of habeas corpus, and the August 20, 2018, judgment following resentencing by filing petition for writ of certiorari in the North Carolina Court

of Appeals. (DE 19-3). On March 4, 2019, the North Carolina Court of Appeals denied the petition to the extent petitioner sought appellate review of the orders partially denying the 2018 MAR and denying the habeas corpus petition. (Mar. 4, 2019, order (N.C. Ct. App.) (DE 19-4)). The court of appeals dismissed without prejudice the petition to the extent petitioner sought appellate review of the August 20, 2018, judgment, directing petitioner to pursue such challenges by filing direct appeal of the new judgment. (Id.).

On April 19, 2019, petitioner attempted to perfect his appeal of the August 20, 2018, judgment by filing the record on appeal. (See DE 19-2 at 1–3). On June 3, 2019, petitioner filed his opening brief, arguing the following claims: 1) the trial court erred by denying the August 27, 2018, habeas petition to the extent that petitioner argued jurisdictional defects due to invalid indictments; 2) violations of the Fifth Amendment's Double Jeopardy Clause and other constitutional provisions during resentencing; 3) the trial court erred by denying the 2018 MAR in part; and 4) the trial court erred by denying his motions to dismiss based on lack of jurisdiction and invalid indictments. (Appellant's Br. (DE 19-5) at 10, 34–69). On October 17, 2019, the North Carolina Court of Appeals granted the state's motion to dismiss the appeal for violations of the North Carolina Rules of Appellate Procedure and where petitioner did not have a statutory right to appeal the orders denying his 2018 MAR or the issues raised in his August 27, 2018, petition for writ of habeas corpus. (State's Mot. Dismiss (DE 19-6) at 15–21; Oct. 17, 2019, order (N.C. Ct. App.) (DE 19-9)). Petitioner did not seek appellate review of this order in the North Carolina Supreme Court. (Pet. (DE 1) ¶ 9).

Petitioner filed the instant § 2254 petition on January 22, 2020, broadly alleging the following claims: 1) violations of the Double Jeopardy Clause during resentencing; 2) that the state

4

court lacked jurisdiction to resentence him or impose the original 2009 judgment of conviction; 3) the state court violated the multiple punishments component of the Double Jeopardy Clause during resentencing and in his original 2009 judgment; and 4) the state court violated petitioner's right to finality of his sentence in his 2009 judgment and during resentencing. Within these broader categories, petitioner raises numerous subclaims, including ineffective assistance of counsel; prosecutorial misconduct; the state court improperly amended his indictments by charging the jury on aiding and abetting and acting in concert theories and the lesser included offense of assault with a deadly weapon inflicting serious injury; the state court violated various finality principles and the Double Jeopardy Clause by miscalculating his prior record level at resentencing; the state court lacked authority to resentence him where he established the 2009 judgment was void; and that he is a Moorish American National and therefore he is not subject to the laws of North Carolina. In support, petitioner relies upon memorandum of law and exhibits thereto comprised of records from his trial, sentencing, and state post-conviction proceedings, media reports concerning his trial counsel, and documents related to his claimed status as a Moorish American National.

On October 23, 2020, respondent filed the instant motion for summary judgment, supported by statement of material facts, memorandum of law, and appendix of exhibits thereto, comprised of records from petitioner's trial, sentencing, and state post-conviction proceedings. Petitioner responded in opposition on October 13, 2020, supported by memorandum of law and appendix incorporating by reference the same exhibits filed in connection with the original petition.

# STATEMENT OF THE FACTS

The facts underlying petitioner's convictions, as recounted by the North Carolina Court of

Appeals, are summarized below:

On 6 January 2009, Bruce Lamont Gorham ("Defendant") was indicted by the Wake County Grand Jury for robbery with a dangerous weapon, assault with intent to kill inflicting serious injury, and conspiracy to commit first-degree burglary. Following the indictment, the State filed a response to Defendant's attorney's request for discovery and gave notice to Defendant that, pursuant to N.C. Gen. Stat. § 8C–1 Rule 609(b), the State would introduce evidence of Defendant's convictions that were more than ten years old. The matter came on for trial at the 28 September 2009 Criminal Jury Session in Wake County.

The State's evidence at trial tended to establish the following. Ms. Lalarnie Lee testified that, on the night of 6 June 2008, she and her 12–year–old daughter were spending the night at the Raleigh home of Lee's boyfriend, Ralph Wright. At approximately midnight, Lee answered a knock on the front door. When she opened the door, a woman told her that her car had broken down and she needed to use a telephone. Lee directed her to a nearby church to seek help, told her that Wright was on his way home, and told her she would send him to the church to help. The woman then asked Lee if she had a cell phone the woman could use, and if she could sit on the patio and wait for help. Lee told her "No," closed the door, and went back inside the house.

As Lee returned to the living room, she heard the back door being kicked open and saw two men enter the room. Lee became frightened, and as she ran towards the front door, one of the intruders shot her in the stomach and threw her on a chair. The man who shot her began to interrogate her, asking, "Where is the money? Where is all the stuff? Where is it?" Lee told the men she did not know and pleaded that they take whatever they wanted and leave. One of the men waived a gun at Lee's head and said, "I should kill you." After grabbing a pocketbook and a briefcase, the men left. An ambulance arrived and transported Ms. Lee to the hospital, where she underwent emergency surgery to remove the bullet, which had lodged near her spine.

At trial, Ashley Wilson, one of the men who participated in these events, testified for the State. Prior to his testimony to these events, Wilson pled guilty to burglary, armed robbery, and felony assault with intent to kill inflicting serious injury. Wilson testified in the hope that his cooperation would be taken into consideration when he was sentenced.

Case 5:20-hc-02009-FL   Document 27   Filed 09/22/21   Page 6 of 24

Wilson testified to the events that led up to the incident at Wright's house on the night of 6 June 2008. Wilson was in Washington, North Carolina when Dwante Barnes picked him up to go for a car ride. Barnes and Wilson subsequently met up with Barnes' girlfriend, Christy Small, and Ronnie Brooks. The four then drove to Raleigh in two cars.

When they arrived in Raleigh, the four stopped in a Wal–Mart parking lot, where Defendant arrived a few minutes later. After a brief discussion between Barnes and Defendant, all of the participants piled into one car. Defendant then drove Wilson, Barnes, Small, and Brooks ("the participants") to Wright's house. En route, Defendant explained that he believed Wright had some money and drugs located in his house. After this discussion, Wilson understood that they were planning to rob or break in to Ralph Wright's house. Wilson understood that his role would be to go into the house with Brooks and look for the money and drugs.

When they arrived at Wright's house, Wilson and Brooks got out of the car. The others left. Wilson and Brooks then sat nearby and waited to "determine their next move." About twenty minutes later, Defendant called Wilson's cell phone and told Wilson he was at a bar with Wright. Wilson testified that Defendant was orchestrating their moves and that Wilson was to break into Wright's house after the phone call.

About ten minutes after Defendant's phone call, Wilson saw Small walk to the door of Wright's house. Wilson testified that he and Brooks knew this was the moment they were to leave the woods, stand beside the house, and wait to enter.

As they stood on the side of the house, Wilson and Brooks listened to Small's conversation with Lee. When they heard Lee tell Small that she could not use her phone, Wilson and Brooks went to the back door of the house and kicked in the door. Wilson heard Lee scream and saw her going towards the door. Wilson went to the bedroom, where he encountered Lee's daughter. Wilson asked her where the money was located, and the young girl only shook her head.

Wilson then heard a shot fired. When he heard the shot, Wilson turned around and saw a briefcase and pocketbook on the floor; Wilson grabbed them and ran out the door. Brooks followed. The two men ran towards the car, which was parked down the street. When they got in the car, Barnes drove the car and spoke to Defendant on his cell phone. Barnes picked up Defendant and they drove back to Wal–Mart.

Christy Small also testified for the State on the advice of her attorney that she would receive leniency at her sentencing for pleading guilty to conspiracy to commit armed robbery, accessory after the fact to robbery, assault and burglary. She testified that on 6 June 2008, she met Barnes in Washington. Barnes was her boyfriend at the time. Small testified that she arrived with Barnes, Defendant, and

Brooks at the gas station near Wright's home. While everyone was in the vehicle together, Barnes, Defendant, and the other men told Small that she was to go knock on the front door of the house, and when the woman opened the door, she was to get out of the way and return to the car. Small followed the instructions, and when Lee would not open the door, she walked away from Wright's house. As she walked up the street, she heard a noise from the house, then saw Barnes' car driving up the road. She got in his car and saw Brooks and Wilson were already in the car. Small heard the three men arguing in the car about what had transpired and their disappointment with the result of the events of the evening. Small also testified that Barnes was on the phone with Defendant for about an hour discussing what had happened.

Ralph Wright testified for the State. At the time of his testimony, Wright was awaiting sentencing on unrelated criminal charges and his testimony was motivated in part by a desire to provide "substantial assistance" to law enforcement officers. Wright had known Defendant since 2007 and owed Defendant $2,500 as a result of a drug deal earlier in the year. On 6 June 2008, at 3 p.m. Defendant came by Wright's house asking him to pay this debt. Wright told Defendant that he did not have the money. Later that night, around 6 p.m., Wright received a call from Defendant asking Wright to come meet him.

Detective Kenny Blackwell of the Wake County Sheriff's Office testified about his investigation into the 6 June 2008 robbery. A confidential informant informed him that Christy Small and Ashley Wilson had been involved in the robbery. Detective Blackwell arrested both persons and questioned them after Lee identified them in a photographic lineup. Small and Wilson gave conflicting statements to Detective Blackwell before admitting to their roles and Defendant's role in these events.

Defendant testified he had known Ralph Wright for a few years and considered him a friend. Defendant testified he would buy drugs from Wright and sell drugs for him. Defendant, however, denied Wright owed him money and denied calling Wright to ask him for money. Defendant admitted he had been in Wright's house to visit Wright on many occasions and that Wright's girlfriend was there on at least one such occasion. Defendant denied, however, that he had ever met Small or Wilson and denied he had ever instructed them to commit any crimes. He further testified he knew Mr. Barnes as they "used to shoot pool together," but did not know Mr. Brooks. During his cross-examination, Defendant was asked about convictions for felonies more than ten years old.

At the close of the State's evidence, and again at the close of all the evidence, Defendant filed motions to dismiss for lack of sufficient evidence, which were denied. The trial judge conducted a charge conference, at which time he determined he would instruct the jury on the charges contained in the indictments and would

include, over Defendant's objection, a charge on the lesser included offense of assault with a deadly weapon with intent to inflict serious injury.

Gorham, 2011 WL 1940976, at *1–3.

## COURT'S DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at

9

a result opposite" to that of the Supreme Court.   Williams v. Taylor, 529 U.S. 362, 406 (2000).

A state court decision "involves an unreasonable application" of Supreme Court law "if the state

court identifies the correct governing legal principle from [the Supreme] Court's cases but

unreasonably applies it to the facts of the state prisoner's case."   Id. at 407.   A state court decision

also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent

to a new context where it does not apply, or unreasonably refuses to extend existing precedent to

a new context where it should apply.   Id.   The applicable statute

> does not require that a state court cite to federal law in order for a federal court to
> determine whether the state court decision is an objectively reasonable one, nor
> does it require a federal habeas court to offer an independent opinion as to whether
> it believes, based upon its own reading of the controlling Supreme Court
> precedents, that the defendant's constitutional rights were violated during the state
> court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001).   Moreover, a

determination of a factual issue made by a state court is presumed correct, unless rebutted by clear

and convincing evidence.   See 28 U.S.C. § 2254(e)(1).

By contrast, in the event the state court does not adjudicate the merits of the petitioner's

claims, and the claim is not procedurally defaulted or the respondent fails to assert procedural

default, the federal court reviews the claim de novo.   Plymail v. Mirandy, 8 F.4th 308, 316 (4th

Cir. 2021); Valentino v. Clarke, 972 F.3d 560, 576 (4th Cir. 2020).

B.     Analysis

1.     Double Jeopardy Claims

As a threshold issue, respondent argues that petitioner's double jeopardy challenges to his

resentencing judgment are procedurally defaulted.   Petitioner presented at least some of his

double jeopardy claims to the North Carolina Court of Appeals in the context of his direct appeal

10

of the August 20, 2018, resentencing judgment.   (See Appellant's Br. (DE 19-5) at 43).   As noted above, the North Carolina Court of Appeals dismissed this appeal on procedural grounds and petitioner did not seek further review in the North Carolina Supreme Court.   (See State's Mot. Dismiss (DE 19-6) at 15–21; Oct. 17, 2019, order (N.C. Ct. App.) (DE 19-9); Pet. (DE 1) ¶ 9).

Where a state inmate fails to exhaust state court remedies prior to filing a federal habeas petition, and state procedural rules would bar petitioner form asserting the clams if he returned to state court, the claims are procedurally defaulted.   Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000); Gray v. Netherland, 518 U.S. 152, 161 (1996); see also Coleman v. Thompson, 501 U.S. 722, 749–50 (1991).   Procedurally defaulted claims are unreviewable in federal court unless the petitioner shows cause and prejudice, or that failure to review the claim will result in a fundamental miscarriage of justice.   Coleman, 501 U.S. at 750; Plymail v. Mirandy, 308 F.4th at 316.   The state respondent bears the burden of pleading and proving procedural default.   See Plymail, 308 F.4th at 316.

Here, as discussed above, the North Carolina Court of Appeals dismissed petitioner's double jeopardy claims on procedural grounds unrelated to the merits, and petitioner did not seek further review of these claims in the North Carolina Supreme Court.   But to successfully invoke the doctrine of procedural default, respondent must establish that "it is clear that the habeas petitioner's claims are now procedurally barred under state law."   Gray, 518 U.S. at 161 (emphasis added).   Respondent provides no citation to a North Carolina statute, rule, or case that establishes petitioner is now procedurally barred from seeking further appellate review in the North Carolina Supreme Court or by filing a motion for appropriate relief.   The only case cited by

11

respondent addresses Illinois law.   See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). Respondent has not established this claim is procedurally defaulted.

Although respondent fails to establish procedural default, petitioner also did not fully exhaust state court remedies with respect to his double jeopardy claims.   The court, however, may deny a habeas application "on the merits, notwithstanding the failure of the applicant to exhaust" state court remedies.   28 U.S.C. § 2254(b)(2).   The court exercises its discretion to proceed to the merits in this case, where petitioner clearly fails to establish a double jeopardy violation, even under de novo review, for the reasons discussed below.   See Plymail, 308 F.4th at 316 (stating claims that were not addressed on he merits in state court should be reviewed de novo); McCarver v. Lee, 221 F.3d 583, 594 n.6 (4th Cir. 2000) (noting that if a claim fails under de novo review, it necessary fails deferential review provided for in § 2254(d)).

The Double Jeopardy Clause prohibits 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense.   See Jones v. Thomas, 491 U.S. 376, 381 (1989); United States v. Martin, 523 F.3d 281, 290 (4th Cir. 2008).   Petitioner's double jeopardy claims implicate the prohibition on multiple punishments.   Generally, the Double Jeopardy Clause does not bar resentencing when a conviction or sentence is set aside on appeal.   See United States v. Wilson, 420 U.S. 332, 344–45 (1975); Evans v. Thompson, 881 F.2d 117, 123 n.1 (4th Cir. 1989), cert denied 947 U.S. 1010 (1990).   Where a petitioner has developed an expectation of finality in the sentence, however, the Double Jeopardy Clause may proscribe resentencing, particularly in circumstances where the petitioner fully served the sentence prior to resentencing.   See United States v. Silvers, 90 F.3d 95, 99–101 (4th Cir. 1999).   But a petitioner "[can] have no legitimate

12

expectation of finality in his sentence [where] he has asked that the prior sentence be nullified." Id.

Here, as a general matter, petitioner cannot claim that he had an expectation of finality in a sentence that he sought to have vacated. See id.; see also United States v. Scott, 437 U.S. 82, 99 (1978). Accordingly, petitioner's claims that the 2018 resentencing judgment contravened the Double Jeopardy Clause because he developed an expectation of finality in the sentence is without merit.

Petitioner argues at length that where he fully served the sentence for the robbery conviction prior to resentencing, the state trial court violated the Double Jeopardy Clause by resentencing him on that conviction under Ex parte Lange, 18 Wall 163 (1873) and In re Bradley, 318 U.S. 50 (1943). In Lange and Bradley, the defendants were sentenced to both a term of imprisonment and a fine, when the criminal statutes under which they were prosecuted permitted only a fine or imprisonment. See Jones, 491 U.S. at 382–83 (describing Lange and Bradley). The sentencing courts, recognizing their errors, later revised the sentences to terms of imprisonment only. Id. In both cases, the Supreme Court determined that the second judgment violated the Double Jeopardy Clause where the defendants had already paid the fine and fully satisfied that portion of the sentence prior to resentencing. Id.; Lange, 18 Wall at 175; Bradley, 318 U.S. at 52.

The Supreme Court, however, has limited Lange and Bradley to their precise factual circumstances: where the statue prescribes "alternative punishments . . . for a single criminal act[,]" the sentencing court imposes both punishments, and then later revises the judgment to reflect only one of the alternative punishments. Jones, 491 U.S. at 382–86 ("[W]e do not think

13

the law compels application of <u>Bradley</u> beyond its facts.").   This is because the prohibition on multiple punishments seeks to ensure "that the total punishment did not exceed that authorized by the legislature."   <u>Id.</u> at 381.   The <u>Lange</u> and <u>Bradley</u> sentencing courts violated the Double Jeopardy Clause by imposing a new punishment after the defendants had satisfied one of the <u>alternative</u> sentences authorized by the legislature.   <u>See id.</u> at 382–86.   By contrast, in the context of resentencing after a vacated conviction or sentence, a sentencing court does not contravene <u>Lange</u> or <u>Bradley</u> so long as the total punishment imposed, including any award of   credit for time served, does not exceed the statutory maximum for the defendant's (new) convictions.   <u>See id.</u> at 381–82; <u>see also</u> <u>Litschewski v. Dooley</u>, 792 F.3d 1012, 1017 (8th Cir. 2015) (denying § 2254 relief on similar claim where "the state court here, as in <u>Jones</u>, credited Litschewski for time served [on the improper sentence] and imposed terms of imprisonment that had been authorized by the legislature").

Here, petitioner fails to establish that his resentencing resulted in a punishment that exceeded the statutory maximum prescribed by North Carolina law.   And he was given full credit for time served on the robbery conviction prior to resentencing.   (<u>See</u> Sent'g Tr. (DE 19-2) at 24). As explained in <u>Jones</u>,

> Given that, in its application to the case before us, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended, the state-court remedy fully vindicated respondent's double jeopardy rights. The Missouri court vacated the attempted robbery conviction and sentence and credited the time that respondent had served under that conviction against the remaining sentence for felony murder. This remedy of crediting time already served against the sentence that remained in place is consistent with our approach to multiple punishments problems in other contexts.

<u>See</u> <u>Jones</u>, 491 U.S. at 381–82 (internal quotation omitted).

In addition to the bar on resentencing that results in a punishment greater than the legislature intended, the Fourth Circuit has held that "once a defendant fully serves a sentence for a particular crime, the Double Jeopardy Clause's bar on multiple punishments prevents any attempt to increase thereafter a sentence for that crime." See Silvers, 90 F.3d at 101. Here, even assuming petitioner had fully served his sentence for the robbery conviction at the time of resentencing, he was resentenced to the same term of imprisonment on that conviction and received credit for time served. (See J. & Commitment (DE 19-2) at 89, 162 (establishing petitioner received the same sentence on his robbery conviction in both proceedings); Sent'g Tr. (DE 19-2) at 24 (providing credit for time served pursuant to the 2009 judgment)). The new judgment therefore did not "increase" the punishment for the robbery conviction. See Silvers, 90 F.3d at 101.

Alternatively, the record reflects that petitioner had not served more than 129 months' imprisonment, the lower end of his original sentencing range on the robbery conviction, at the time he was resentenced. (See Sent'g Tr. (DE 19-2) at 24 (stating defendant had served 3,481 days, or approximately 114 months, on the date of resentencing)). In the absence of a showing that this calculation of petitioner's prior custody time is inaccurate, and petitioner provides none, Lange and Bradley do not provide a basis for habeas relief. See Bradley, 318 U.S. at 52 (stating that where "one valid alternative provision of the original sentence has been satisfied, the petitioner is entitled to be freed of further restraining"); Lange, 18 Wall at 176 (noting in dicta that where a defendant "had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish him further was gone."); Silvers, 90 F.3d at 101 (explaining defendant develops expectation of finality in the sentence when it is fully served).

15

Finally, the court turns to plaintiff's argument that his sentence violated double jeopardy principles because he was convicted of three offense for the same criminal act. The Supreme Court addressed whether two offenses are the same for purposes of double jeopardy in Blockburger v. United States, 284 U.S. 299 (1932). In Blockburger, the Court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Id. at 304.

Under North Carolina law, "the essential elements of robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a person is endangered or threatened." State v. Gwynn, 362 N.C. 334, 337 (2008) (quotations omitted) (citing N.C. Gen. Stat. § 14-87). The offense of assault with a deadly weapon inflicting serious injury requires proof of 1) an assault; 2) with a deadly weapon; 3) inflicting serious injury; and 4) that does not result in death. See N.C. Gen. Stat. § 14-32(b); State v. Jones, 353 N.C. 159, 164 (2000). And the offense of conspiracy to commit first-degree burglary requires proof of 1) an agreement between two or more people; 2) to do an unlawful act, specifically first-degree burglary. See State v. Larrimore, 340 N.C. 119, 156 (1995); State v. Gibbs, 335 N.C. 1, 47–48 (1993).

These offenses each require proof of facts that the others do not, thereby precluding petitioner's double jeopardy challenge. See Blockburger, 284 U.S. at 304. The robbery conviction requires endangering or threatening the victim's life, whereas the assault and conspiracy convictions do not. The assault conviction requires a serious injury, whereas the

16

robbery and conspiracy convictions do not. And the conspiracy conviction requires an agreement between two or more people to commit an unlawful act, whereas the robbery and assault convictions do not.

Based on the foregoing, petitioner's double jeopardy arguments are without merit under de novo review.

2.     Remaining Claims

The court now turns to the remaining claims in the habeas petition. The majority of these claims were resolved on the merits in petitioner's prior habeas petition. See Gorham, 2015 WL 12915120, at *5–11. Respondent argues that the court should dismiss these claims as barred by 28 U.S.C. § 2244(b)(1). Section 2244(b)(1) provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1).

The instant petition is not second or successive where petitioner successfully challenged the original judgment and obtained resentencing prior to filing the petition. See Magwood v. Patterson, 561 U.S. 320, 332–32, 342 (2010) (explaining that the phrase "second or successive" in § 2244(b)(1) is a "term of art" that "must be interpreted with respect to the judgment challenged" and therefore a numerically second habeas petition is not "second or successive" if the defendant was resentenced after denial of the first petition); see also In re Gray, 850 F.3d 139, 141–43 (4th

17

Cir. 2017).[2]  Accordingly, the court proceeds to the merits of these claims,[3] with benefit of and reference to the December 22, 2015, order.

Petitioner argues that his status as a Moorish American National deprives the state court of jurisdiction to prosecute him.  "Neither the citizenship nor the heritage of a defendant constitutes a key ingredient to a . . . court's jurisdiction in criminal prosecutions . . . ."  <u>United States v. White</u>, 480 F. App'x 193, 194 (4th Cir. 2012); <u>see also</u> <u>United States v. Benabe</u>, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts.  These theories should be rejected summarily, however they are presented."); <u>see also</u> <u>Gorham</u>, 2015 WL 12915120, at *5.  Accordingly, even under de novo review, petitioner's challenges to the state court's jurisdiction based on his claimed status as a Moorish American National are without merit.

---

[2]      The court's prior order addressing petitioner's claims remains relevant to the analysis of these claims.  In responding to the concern that <u>Magwood</u>'s judgment challenged rule would allow habeas petitioners to "reraise every argument against a sentence that was rejected by the federal courts during the first round of federal habeas review," the Supreme Court explained that "it will not take a court long to dispose of such claims where the court has already analyzed the legal issues."  <u>Magwood</u>, 561 U.S. at 340 n.15.

[3]      If the state courts resolved these claims on the merits after resentencing, deferential review under § 2254(d) applies.  <u>See</u> 28 U.S.C. § 2254(d); <u>Magwood</u>, 561 U.S. at 340 (noting petitioner must exhaust state court remedies with respect to all habeas claims asserted after resentencing even if such claims were presented to the state court and exhausted prior to entry of the new judgment).  Respondent fails to argue that these claims were resolved on the merits in state court after petitioner's resentencing.  The court's review of the state court records suggests some of the claims were presented to the state trial court in petitioner's August 27, 2018, state habeas petition.  (See DE 19-2 at 117–53).  And that petition was denied summarily by the North Carolina Court of Appeals.  (See Mar. 4, 2019, order (N.C. Ct. App.) (DE 19-4)); <u>Harrington v. Richter</u>, 562 U.S. 86, 99–100 (2011) (state court's summary order denying post-conviction relief qualifies as an adjudication on the merits).  Thus, the court reviews petitioner's claims alleging defective indictments, the challenges to calculation of his prior record level, and his ineffective assistance of counsel claims under the deferential standard in § 2254(d)(1).   While the remaining claims are unexhausted, the court exercises its discretion to proceed to the merits of these claims notwithstanding petitioner's failure to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).  The court will review these claims de novo where they are plainly without merit.  <u>See</u> <u>McCarver</u>, 221 F.3d at 594 n.6

The court now turns to petitioner's challenges to his indictments and his argument that the defective indictments deprive the state court of jurisdiction. Petitioner alleges that prosecutors and the state court improperly amended the indictments by allowing jury instructions on aiding and abetting and acting in concert theories, and by allowing a jury instruction on assault with a deadly weapon inflicting serious injury when petitioner was charged with assault with a deadly weapon with intent to kill. As explained in the December 22, 2015, order "there is no federal constitutional requirement for an indictment in a state criminal proceeding." Gorham, 2015 WL 12915120, at *5 (quoting Hartman v. Lee, 283 F.3d 190, 195 n.5 (4th Cir. 2002)). All that is constitutionally required is that the defendant receive adequate notice of the charges in order to allow him to prepare a defense. Id. (citing Cole v. Arkansas, 333 U.S. 196, 201 (1948)). The court finds the indictments in this case provided sufficient notice consistent with Cole. (See Indictments (DE 19-2) at 34–36).[4]

Furthermore, a defect in the indictment does "not deprive a court of its power to adjudicate a case" and thus petitioner's jurisdictional challenges based on the alleged defective indictments are without merit. United States v. Cotton, 535 U.S. 625, 630 (2002). Accordingly, petitioner fails to show that the state court's resolution of his claims challenging the indictments and the jurisdiction of the state trial court were contrary to, or involved an unreasonable application of,

---

[4] To the extent petitioner is reasserting his claims challenging the jury instructions, these claims are without merit for the reasons stated in the December 22, 2015, order. See Gorham, 2015 WL 12915120, at *6–9. The claims are issues of state law that are unreviewable in federal court absent a showing that the instructions amounted to a fundamental miscarriage of justice. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Bates v. Lee, 308 F.3d 411, 418 (4th Cir. 2002). And petitioner wholly fails to show a fundamental miscarriage of justice or that the jury instructions "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." See Hopper v. Evans, 456 U.S. 605, 612 (1982) (stating that federal law provides that a lesser include offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater"); Cupp v. Naughten, 414 U.S. 141, 146 (1973); Bates, 308 F.3d at 418.

Case 5:20-hc-02009-FL    Document 27    Filed 09/22/21    Page 19 of 24

clearly established federal law as determined by the Supreme Court, or that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

The court next turns to plaintiff's ineffective assistance of counsel claims. The Sixth Amendment right to counsel includes the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy a two-prong test. First, a petitioner must show that counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. at 688. The court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Petitioner must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and establish "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." Harrington v. Richter, 562 US 86, 104 (2011). For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id.

To the extent petitioner's claim is that counsel failed to object to his indictments, the jury instructions, or the ultimate verdicts on the grounds set forth above, petitioner has failed to show either deficient performance or prejudice. Where the underlying claims are without merit, counsel is not ineffective for failing to raise them.[5] See id.

---

[5]     Furthermore, as noted in the December 22, 2015, order, petitioner's counsel objected to the jury instruction on the lesser included offense of assault with a deadly weapon inflicting serious injury. See Gorham, 2015 WL 12915120, at *10.

20

Petitioner also asserts that his trial counsel was ineffective where counsel was involved in alleged unrelated criminal activity at the time of petitioner's trial. Petitioner suggests that this fact created a conflict of interest.

> To establish ineffective assistance of counsel based on a conflict of interest that was not raised before the trial court, the defendant must demonstrate that (1) counsel operated under "an actual conflict of interest" and (2) this conflict "adversely affected his lawyer's performance."

Woodfolk v. Maynard, 857 F.3d 531, 553 (4th Cir. 2017) (quoting United States v. Dehlinger, 740 F.3d 315, 322 (4th Cir. 2014). Assuming without deciding that counsel labored under a conflict of interest during the representation, petitioner fails to establish that the alleged conflict adversely affected his counsel's performance. As discussed above, counsel's alleged failure to raise objections or arguments that are without merit does not establish deficient performance or that the conflict "adversely affected" performance. Accordingly, petitioner fails to show that the state court's resolution of his ineffective assistance of counsel claims were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

The court now turns to petitioner's claims of prosecutorial misconduct. In order to establish a claim for prosecutorial misconduct, petitioner must demonstrate: "(1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial." United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (citing United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999)).

Petitioner alleges that the state prosecutors illegally amended the indictments by seeking jury instructions on aiding and abetting and acting in concert theories, and the lesser included offense of assault with a deadly weapon inflicting serious injury.   He further alleges prosecutors committed "perjury" by charging him as a principal for the robbery and assault convictions when he was not present at the crime scene.   These claims are without merit for the reasons set forth above.   The indictments and jury instructions in this case did not violate petitioner's constitutional rights, and petitioner fails to show prosecutorial misconduct with respect to either of these claims under the standard set forth above.   Reviewing the prosecutorial misconduct claims de novo, petitioner fails to establish a violation of the Constitution, law, or treaties of the United States with respect to these claims.   See 28 U.S.C. § 2254(a).

Finally, petitioner challenges the calculation of his prior record level for purposes of both his initial 2009 sentencing and the 2018 resentencing.   The prior record level determination is an issue of state law that is not cognizable on federal habeas review.   See Estelle, 502 U.S. at 67–68; Lewis, 497 U.S. at 780; see also Williams v. North Carolina, No. 5:15-HC-2069-BO, 2016 WL 7655773, at *3 (E.D.N.C. June 16, 2016), appeal dismissed, 670 F. App'x 73 (4th Cir. 2016). And petitioner wholly fails to establish that he was sentenced in a manner that was so arbitrary and capricious that it violated the Constitution.   See Lewis 497 U.S. at 780 (explaining "federal habeas review of a sate court's application of a constitutionally narrowed aggravating circumstance is limited, at most, to determining whether the state court's finding was so arbitrary and capricious as to constitute an independent due process or Eighth Amendment violation").[6]   Accordingly,

---

[6]   In addition, the court observes that petitioner successfully challenged the prior record level calculation from his 2009 resentencing and the state court resentenced him.   (See Sent'g Tr. (DE 19-2) at 11).   His challenge to that sentence is therefore moot.

petitioner has not established that the state court's resolution of his claims challenging his prior record level were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

C.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition. A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

23

**CONCLUSION**

Based on the foregoing, respondent's motions for summary judgment (DE 17) is GRANTED. The petition is DISMISSED with prejudice, and a certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 22nd day of September, 2021.

LOUISE W. FLANAGAN
United States District Judge